Submitted on application of defendant-appellee for rehearing. We have considered the application. No good purpose would be served in restating the basis for our original opinion to which we adhere. We had no misconception of any fact which we deemed to be controlling.

We recognize, that upon the question of contributory negligence of plaintiff the facts present a border line case but according to the plaintiff the most favorable intendment to his evidence, as we are required to do in considering the motion for a directed verdict, we are satisfied that it presented a question for the jury.

The application will be denied.

HORNBECK, P. J., and MILLER, J., concur.
GEIGER, J., dissents.

**FICKES, et, Plaintiffs, v. RYAN, et, Defendants.**

Common Pleas Court, Tuscarawas County.

Decided July 24, 1945*

*Footnote:—No appeal taken.

142

Bowers, Stafford & Bowers, New Philadelphia, for plaintiffs.

Arthur P. Cunningham, New Philadelphia, for defendant, D. M. Ryan.

## OPINION

By LAMNECK, J.

This is an action for the cancellation of a coal lease entered into by the parties on August 5, 1942. The plaintiffs base their contention on the defendants' alleged refusal, failure and neglect to mine and remove the coal on the premises leased to the defendants, thereby violating the implied covenants of the lease to mine and remove said coal.

The defendant, Walter W. Wilkinson, is in default of answer, but the defendant, D. M. Ryan, claims an assignment and transfer to him dated December 6, 1942, of all the right, title and interest of said Walter W. Wilkinson under said lease.

The defendant, D. M. Ryan, in his answer sets up the following defenses:

1. A general denial.

2. That the court has no jurisdiction by virtue of "The Ohio Arbitration Act", §12148-1 to 17 GC inclusive.

3. That the judgment of this court dated June 25, 1943 is res-adjudicata to this action.

Under the contract in question, the plaintiffs leased certain coal land owned by them to the defendants, to be mined by the strip mining method, the only consideration

therefor being the sum of One Dollar ($1.00) and specified royalties on a tonnage basis to be paid on the 10th and 25th day of each month covering the preceding periods of the 15th to the 31st, and the 1st to the 15th respectively.

The lease also contains the following provision:

"Any dispute arising under this contract shall be settled under the so-called arbitration act, §12148-1 to 12148-17 GC of Ohio."

The lease contains no clause for continuous operation, minimum royalty or forfeiture.

From this evidence adduced in this case it appears that there are about thirteen acres of stripable coal lying within forty feet of the surface on the plaintiff's premises covered by the lease in question and that approximately 75,000 tons of coal could be removed by the strip mining process with ordinary machinery and reasonable diligence within a period of two years.

Subsequent to the execution of the lease, the defendants moved two used steam shovels and some other equipment onto the premises and uncovered some coal, but did not remove any prior to the 11th day of January, 1943 when the plaintiffs brought an action in this court for the cancellation of the lease. That case was disposed of on the 25th day of June, 1943 when this court held "that the defendants have not abandoned the property nor have the defendants forfeited their rights under the contract."

Following this order of the court, the defendant, Ryan, entered into an agreement which in effect is a sub-contract, with one L. J. Calder, under date of December 31, 1943 in which the said Calder agreed to operate under the lease in question. On May 24, 1944 the said L. J. Calder assigned and transferred his interest in his contract with the defendant Ryan to the Four C's Coal Company, a corporation, to which the said D. M. Ryan gave his approval and consent in June, 1944.

For a few days during the forepart of May, 1944, 605.55 tons of coal were removed from the premises of the plaintiffs for which they received 25 cents per ton royalty from the Four C's Coal Company under date of June 30, 1944.

This is the only coal mined under the lease in question in this case, to date. Prior to the beginning of this action on November 20, 1944, all the machinery had been removed from the premises.

The first issue to be determined by the court in this case is whether or not this action is barred by the provisions of The Ohio Arbitration Act.

**Sec. 12148-1** of said Act reads as follows:

"A provision in any written contract, except as provided in subsections (a) and (b) of this section, to settle by arbitration a controversy thereafter arising out of such contract, or out of the refusal to perform the whole or any part thereof, or any agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

The provisions of this act shall not apply to (a) collective or individual contracts between employers and employees in respect to terms or conditions of employment, or (b) to contracts entered into or awards made prior to the effective date of this act, (c) to controversies involving the title to, or the possession of real estate, with the following exceptions:

(1) Controversies involving the amount of increased or decreased valuation of the property at the termination of certain periods, as provided in a lease;

(2) Controversies involving the amount of rentals due under any lease;

(3) Controversies involving the determination of the value of improvements at the termination of any lease;

(4) Controversies involving the appraisal of property values in connection with making or renewing any lease;

(5) Controversies involving the boundaries of real estate."

This section means in so far as it relates to this case, that the agreement to submit any dispute "arising under the contract" to arbitration is valid, irrevocable and enforceable, except:

1. As to suits to revoke a contract upon such grounds as exist at law or in equity.

2. As to controversies involving the title to or the possession of real estate, but including as subjects of arbitration controversies as to valuations, amounts or rentals due, value of improvements, appraisal of property, and boundaries of real estate, under a lease.

This is an action to cancel a lease or revoke a contract of lease upon equitable grounds for alleged violations of implied covenants. Such an action is expressly excepted from "The Ohio Arbitration Act" by §12148-1 GC. This action is also in the nature of an action involving the title to or possession of real estate which is likewise under the same section excepted from the Arbitration Act. It is not a controversy over

the amount of rentals due under the lease, because all the royalties that have accrued thereunder have been paid. The paragraph in §12148-1 GC providing that "Controversies involving the amounts of rentals due under any lease" are subject to arbitration, therefore does not apply.

Coming now to the question of res-adjudicata, the court is of the opinion that the decision of this court dated June 25, 1943 is not a bar to this action. True, the same parties and the same issues are involved, but the conditions now existing are not the same. If the defendants' contention of res-adjudicata was accepted and upheld, then they could hold under the lease for an indefinite and prolonged period without operating and the plaintiffs would have no remedy. Such a contention is untenable.

The real issue to be determined in this case is whether the defendants developed a mine for coal mining purposes within a reasonable time and used ordinary diligence in working the mine and removing the coal therefrom. At the time of the filing of the first action in this court on January 11, 1943, only five months had elapsed since the lease had been executed, and although no coal had been mined during the period the court held that sufficient time had not elapsed to warrant a cancellation of the lease. From the decision of that case on June 25, 1943, until the filing of this action on November 20, 1944, only 605.55 tons of coal had been mined, which represented only a few days operation. At the time of the filing of this action, the defendants had no machinery on the premises, and none in prospect and the only effort made to operate was through a sub-contractor. The one defendant who is defending this action is regularly employed by the State of Ohio as a mining engineer and only engages in strip mining as a side line to his regular vocation. The evidence is clear that mining machinery could have been obtained to operate on this lease, and that other operators were available to strip mine the coal involved, during the period from June 25, 1943 to November 20, 1944. That the coal to have been mined under this lease could have been marketed if mined was not questioned.

When a lease is executed by a lessor for the removal of coal it is upon the condition, either express or implied, that the lessee will proceed with due diligence. It would be unjust and unreasonable to permit a lessee to hold coal land for any length of time without making a reasonable effort to operate in accordance with the purpose of the lease. Where the consideration for a mining lease is an argeement to pay royalty on the product mined; it is the implied intention of

the parties that the lease is executed for the mutual profit of the lessor and lessee, and that the lessee will start operations and develop the premises within a reasonable time, and will use ordinary diligence in working the mine and removing the product thereform. (See 60 A. L. R. 901 and 27 O Jur 56).

The removal of 605.55 tons of coal during a period of two years when the lease was not in litigation could not be construed to be a development of the premises within a reasonable time, or a diligent operation of the mine in question, when approximately thirteen acres of coal or approximately 75,000 tons could have been stripped during this period with ordinary machinery generally used in strip mines.

The court can come to no other conclusion than that the defendants have neglected and failed to develop the premises leased within a reasonable time and have not used ordinary diligence in working and removing the coal from the lands. leased by the plaintiff to the defendants. It will therefore be ordered that the lease be terminated and cancelled as prayed for in the petition.