BOLIVER SPORTSMEN'S CLUB *v.* WHITMER, TRUSTEE, ET AL.*

(No. 40085—Decided September 22, 1969.)

Common Pleas Court of Tuscarawas County.

*Messrs. Fitzpatrick & Zimmerman,* for plaintiff.
*Messrs. Krugliak, Wilkins, Griffiths & Dougherty,* for defendant, Wallick Coal Company.

---

*Affirmed by Court of Appeals March 6, 1970.

210

LAMNECK, J. This is an action wherein the plaintiff seeks to have the court cancel a certain lease for the stripping and removal of coal, clay and limestone on approximately 95 acres of land described in the petition for the reason that there has been no mining operations on said lands for a period of more than three years.

The lease in question in this case was entered into by and between Catherine E. Salinger, the owner and The Huth Hill Coal Company, the lessee, on August 31, 1956.

The lease was assigned to the Mullet Coal Co. on April 27, 1964. The Mullet Coal Company was later adjudged a bankrupt and on January 9, 1968, the Trustee in Bankruptcy for the Mullet Coal Company assigned said lease to the Wallick Coal Co., one of the defendants in this action.

The plaintiff acquired its title to said lands by warranty deed from Catherine E. Salinger without reservations or exceptions on March 31, 1966.

According to the terms of the lease, Catherine E. Salinger, sold, transferred and conveyed to the Huth Hill Coal Company "all the strippable coal, limestone, and/or clay in, under and upon" the land in question on a tonnage royalty basis to be paid on or before the 25th day of each month for minerals mined during the preceding month.

The last paragraph of said lease reads as follows:

"It is agreed by and between the parties hereto that the Lessee is to resume operations, formerly carried on under a lease between the parties hereto, dated October 27, 1950, within three years or this lease may be cancelled by the Lessor. If the operations are resumed and any time discontinued for a period of three years, then this lease may be cancelled at the option of the Lessor."

The last actual stripping and removal of coal from said lands occurred during the latter part of 1963 for which the Huth Hill Coal Company paid Catherine E. Salinger the sum of $136.48 on December 11, 1963, and $44.64 on March 30, 1964.

On February 5, 1969, the plaintiff by its attorneys notified the Wallick Coal Company by letter which contained the following paragraph:

"Be advised that no operations have ever been conducted on the premises pursuant to the lease and no delay rentals or royalties have ever been paid and the lease has been cancelled by its terms."

While this paragraph is somewhat vague in its terms, the court concludes that it is sufficiently definite to inform the Wallick Coal Co. that the plaintiff was cancelling said lease for non-operation for a period of three years.

The defendant, the Wallick Coal Company, claims that its predecessors in title entered onto said premises subsequent to 1963 for the purpose of fulfilling their obligations to the state of Ohio to perform certain reclamation duties as required under the bond given to the state by the Huth Hill Coal Co., and that this activity kept the lease alive. The extent of such activity is very meager and was limited to some leveling operations with a bulldozer for a period of not to exceed several days.

It is clear from the evidence that there was no activity on the lands in question that produced any royalties since 1963 or early 1964.

The courts in most jurisdictions hold that where there is a lease of land for the removal of minerals to be paid on a tonnage royalty basis, there is an implied obligation on the part of the lessee diligently to explore, develop, and work the premises, so that the lessor may obtain the expected income that induced him to grant the lease. See 76 A. L. R. 2d 721.

This court held in *Fickes* v. *Ryan*, 44 Ohio Law Abs. 141, that "where the consideration for a coal lease is the agreement by the lessee to pay a royalty on the coal mined, and the lease contains no provision for continuous operation, minimum royalty, or for forfefiture, there is an implied covenant on the part of the lessee to develop the premises for coal mining purposes within a reasonable time, and that said lessee will use ordinary diligence in working the mine and removing the coal therefrom."

In the instant case there is a provision for cancellation or forfeiture "if operations are discontinued for a period of three years at the option of the lessor."

It would be unjust and unreasonable to permit a lessee

to hold the mineral lands under the lease in question in this case where there was no actual removal of minerals for a continuous period of three years if the lessor or his successors notify the lessee that it had cancelled the lease.

It is generally held that where the consideration for a mining lease is an agreement to pay royalty on the product mined, there is an implied intention of the parties that the lease is executed for the mutual profit of the lessor and lessee, and that the lessee will use ordinary diligence in working the mine and remove the minerals covered by the lease.

Where the sole consideration of a mining lease is the agreement by the lessee to pay a royalty on minerals mined on a tonnage basis, which by the terms of said lease is for an indefinite period, but which contains a provision that the lease may be cancelled for non-operation for a period of three years at the option of the lessor, such lease is cancelled on notice from the lessor or his successor in title if no revenue has been produced by the lessee for the lessor or his successor in title by mining operations for a continuous period of three years immediately preceding the giving of such notice.

It will therefore be ordered that the lease in question be terminated and cancelled as prayed for in the petition.

Exceptions noted.